IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JARED OSBORN and VANESSA OSBORN,<br><br>        Plaintiffs,<br><br>vs.<br><br>CHARLES CRAIG BROWN; CC BROWN LAW, LLC, WILFORD T. LEE, WT LEE & ASSOCIATES, JOHN MCCALL, CHAD GETTEL, KASEY RASMUSSEN, UTAH LITIGATION COUNSELORS, JL MARTIN LAW GROUP, CENTURY LAW, LEGALSUPPORTLINE.COM, SENTRY LAW, and DOE DEFENDANTS 1 THROUGH 20,<br>        Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-cv-775<br><br>Judge Tena Campbell |

## I.  INTRODUCTION

When Plaintiffs Jared and Vanessa Osborn (the Osborns) fell behind in payments on their home mortgage and were facing foreclosure on the mortgage, they contacted Defendant CC Brown Law LLC (CC Brown) for CC Brown's help in getting the loan modified and the foreclosure stopped.   The Osborns paid a fee to CC Brown for CC Brown's services.  The Osborns allege that CC Brown  engaged in a deceptive scheme to defraud the Osborns and others by charging fees up-front to work on a loan modification, and then never performing the work as promised.  The Osborns also accuse the other Defendants—including moving Defendants John McCall and Chad Gettel—of assisting CC Brown to further its scheme.

Mr. McCall moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, arguing that the allegations should be dismissed for failure to meet federal pleading requirements.  (Docket No. 46.)  Mr. Gettel joined in the motion.  (Docket Nos. 66 & 69.)

For the reasons set forth below, Mr. McCall's and Mr. Gettel's Motion for Judgment on the Pleadings (Docket No. 46) is GRANTED.  The claims against Mr. McCall and Mr. Gettel are DISMISSED WITHOUT PREJUDICE, and the Osborns may bring a motion to amend with an attached proposed amended complaint.  If the Osborns fail to do so by May 1, 2013, the court will dismiss the claims against Mr. McCall and Mr. Gettel with prejudice.

## II.  BACKGROUND[1]

According to the Osborns' Complaint, CC Brown advertised itself as a service that could help customers obtain loan modifications and defend against foreclosures.  In April 2011, the Osborns were facing foreclosure, so they met with staff at CC Brown.  In exchange for payment of a fee, staff at CC Brown promised the Osborns that their file would be handled by a lawyer who would negotiate with the mortgage lender to modify their home loan, and that a case manager would serve as a liaison between the Osborns and the lawyer.

The Osborns paid the fee, but now claim that CC Brown never performed the work because no lawyer ever met with them or worked on their file.  The Osborns make a number of allegations including: (1) the staff at CC Brown sent out form letters to the lender to temporarily delay foreclosure but CC Brown never attempted to modify the loan or negotiate with the mortgage lender; (2) when the Osborns tried to contact CC Brown to ask about the status of the loan modification, CC Brown gave them the run-around and falsely claimed that legal work was being done to modify the loan; (3) CC Brown misled the Osborns for a year and as result, they lost their home and suffered financial losses, including the fee they paid for work that was never

---

[1] Facts are taken from the allegations in the Osborns' Complaint, all of which the court assumes as true at this stage.

performed.

In the Complaint, the Osborns give dates and certain month-long time periods over which they had contact with staff at CC Brown.  The Osborns also provide details of conversations they had with staff at CC Brown concerning the loan modification efforts.  The Osborns allege that their files at CC Brown contained very few documents, supporting a conclusion that CC Brown did not perform the work as promised.  The Osborns claim that CC Brown is being investigated by the FBI and has been subject to a number of state sanctions.  Finally, the Osborns identify various individuals and entities who directed or are associated with CC Brown, such as Mr. McCall and Mr. Gettel.

The Osborns tie Mr. McCall and Mr. Gettel to CC Brown's wrongful conduct by alleging that Mr. McCall and Mr. Gettel controlled CC Brown and supervised and trained the staff at CC Brown.  The Osborns accuse Mr. McCall and Mr. Gettel of wire fraud, bank fraud, civil racketeering (under RICO), civil conspiracy (under RICO), fraud, negligent misrepresentation, civil conspiracy, conspiracy to defraud, and unjust enrichment.[2]

---

[2] The Osborns concede that there is no private right of action for wire fraud or bank fraud. (See Mem. In Opposition to Mot. for J. on the Pleadings, Docket No. 54.)  Therefore, those causes of action are HEREBY DISMISSED with prejudice.

There is some confusion about whether the Osborns have asserted breach of contract, breach of covenant of good faith and fair dealing, and breach of fiduciary duty against Mr. McCall and Mr. Gettel.  (See Compl. at ¶¶ 85–93 (accusing "Brown" of those violations, without making clear if those claims were against Defendant Charles Craig Brown, CC Brown, or the collective group of Defendants called "Brown" that includes Mr. McCall and Mr. Gettel).)  Even if the Osborns intended to include Mr. McCall and Mr. Gettel as Defendants in those claims, the allegations would fail for the same reasons as described in this Order.

## III.  ANALYSIS

### A.  <u>Legal Standards</u>

In the motion for judgment on the pleadings, Mr. McCall and Mr. Gettel argue that the allegations are not sufficiently specific.  They contend that the allegations of fraud do not give enough facts, details, names, etc., to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b).  They also maintain that the allegations are conclusory and do not satisfy the plausibility standard required by <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

The Osborns respond that although they have not provided all the exact times, names, and dates involved in CC Brown's scheme, and although they have not stated the exact actions taken by Mr. McCall and Mr. Gettel as part of the scheme, a complaint need not contain each detail of fraud and conspiracy.  The Osborns maintain that they have provided sufficient facts to satisfy federal pleading requirements.

### 1.  Federal Rule of Civil Procedure 8(a) and Plausibility

Rule 8(a) dictates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  If a complaint does not meet that requirement, a party may bring a motion to dismiss or a motion for judgment on the pleadings, both of which are governed by the same standard.  <u>See</u> Fed. R. Civ. P. 12; <u>Ward v. Utah</u>, 321 F.3d 1263, 1266 (10th Cir. 2003).

A  plaintiff meets the requirements of Rule 8 when the complaint provides enough facts to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Plaintiffs cannot

4

merely give "an unadorned, the-defendant-unlawfully harmed-me accusation." Id.  Instead, the

complaint must provide enough details to raise the right to relief above the speculative level.

Twombly, 550 U.S. at 555.  The Tenth Circuit has explained that

> the Twombly/Iqbal standard is a middle ground between heightened fact pleading,
> which is expressly rejected, and allowing complaints that are no more than labels
> and conclusions or a formulaic recitation of the elements of a cause of action,
> which the Court stated will not do.  In other words, Rule 8(a)(2) still lives.  Under
> Rule 8, specific facts are not necessary; the statement need only give the
> defendant fair notice of what the claim is and the grounds upon which it rests.

Burnett v. Mortg. Elec. Registration Sys., No. 09-4216, 2013 WL 386283, at *2 (10th Cir. Feb. 1,

2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." Iqbal, 556 U.S. at 679.  When examining the complaint, a court accepts as true all

well-pleaded factual allegations and views them in the light most favorable to the nonmoving

party.  Id. at 678.  The court may disregard any conclusory allegations, such as legal conclusions,

deductions, or opinions couched as fact.  Id.  For example, claims that only recite the elements of

a cause of action, merely assert the existence of wrongful conduct, or demonstrate nothing more

than a possibility of wrong doing are not plausible enough to comply with Rule 8.  Id. at 678–79.

### 2.  Federal Rule of Civil Procedure 9(b) and Particularity

Rule 9(b) requires that allegations of fraud or mistake must "state with particularity the

circumstances constituting the fraud or mistake." Id.[3]  Generally speaking, Rule 9 requires a

---

[3] There is an exception to Rule 9(b).  The portions of the accusation involving conditions
of the mind—such as malice, intent, and knowledge—only need to be "alleged generally," which
means they only need to be plausible under of Rule 8.  Iqbal, 556 U.S. at 686–87.

complaint to list the "who, what, when, where and how of the alleged fraud," and then go on to detail "the time, place, content, and consequences of the fraudulent conduct." United States ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1171 (10th Cir. 2010) (citing United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726 (10th Cir. 2006) and Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000)).

The decision in Lemmon is instructive.  There, the Tenth Circuit reversed the district court's decision dismissing the complaint for failure to meet the requirements of Rule 9(b).  In Lemmon, The United States government had contracted with Envirocare to dispose of radioactive waste, and Mr. Lemmon allegedly witnessed Envirocare's improper disposal of the waste material.  Mr. Lemmon sued Envirocare in a qui tam action, alleging that Envirocare had violated the False Claims Act by fraudulently claiming the waste had been disposed of properly.

The Tenth Circuit explained why the complaint met the requirements of Rule 9(b):  Mr. Lemmon satisfied the "who" requirement by giving the names and positions of the Envirocare employees who observed the contract-breaching activity, the names of the supervisors to whom those employees reported, and the names of the employees responsible for submitting the false claims to the government.  Mr. Lemmon satisfied the "what" requirement when he listed a series of contractual breaches, pointing to specific contractual obligations that had been breached, and listing the payment requests in great detail.  The specific dates on which some of the violations took place and the dates on which the false claims were submitted to the government were sufficient to meet the "when" requirement.  Mr. Lemmon also met the "where" requirement when he described the general waste disposal area and gave specific instances of sites where violations had occurred.  And finally, Mr. Lemmon met the "how" requirement when he gave details about

6

how the violations occurred, including, in some instances, the conduct that led to the violation, the reason that such conduct was a violation, and describing the consequences of the violation. Furthermore, the <u>Lemmon</u> court noted that Mr. Lemmon had described Envirocare's alleged efforts to conceal the violations, including identifying specific supervisors who instructed Mr. Lemmon to stop documenting violations.  <u>See id.</u> at 1171–73; <u>see also</u> <u>United States ex rel. Lusby v. Rolls-Royce Corp.</u>, 570 F.3d 849 (7th Cir. 2009) (detailing how some allegations of a complaint met the requirements of Rule 9(b), but other allegations did not).

## B.  <u>Analysis of the Osborn's Causes of Action Against Mr. McCall and Mr. Gettel</u>

The Osborns have not sufficiently pled their causes of action against Mr. McCall or Mr. Gettel.  First, the Osborns have not met the requirements of Rule 8(a).  For example, the Osborns allege that Mr. McCall and Mr. Gettel knew of the alleged scheme to defraud customers.  The Osborns point to Mr. McCall's and Mr. Gettel's leadership positions at CC Brown as proof that they must have known of the alleged scheme to defraud customers.  This is not enough to nudge the allegation from the conceivable into the legally plausible.  The Osborns' allegations are currently little more than speculation—the Osborns need to present more facts that support the conclusion that Mr. McCall and Mr. Gettel knew of the alleged scheme.

Another example of failure to plead plausibility is in the unjust enrichment claim.  To make their claim plausible, the Osborns would need to do more than merely state that CC Brown benefitted from the fee they paid up-front, that CC Brown knew about it, and that it would be unfair for CC Brown to retain the fee because the promised work was never completed.  The Osborns' allegations are currently little more than a recitation of the elements of the claim, which is not sufficient.

Second, the Osborns have failed to satisfy the standards of Rule 9(b).  The Osborns have not given details showing the who, what, when, where, and how of Mr. McCall's and Mr. Gettel's alleged conduct.  The Osborns collectively refer to CC Brown and its members, agents, and employees, including Mr. McCall and Mr. Gettel, as "Brown."  (See Compl. ¶ 10, Docket No. 2.)  The Osborns then bring a number of allegations against "Brown," without giving further detail.  Most of the complaint describes actions taken by staff and employees at CC Brown.  Aside from stating that Mr. McCall and Mr. Gettel directed CC Brown and  supervised and trained staff, the complaint does not describe exactly what Mr. McCall or Mr. Gettel did.  The Osborns urge the court to infer from Mr. McCall's and Mr. Gettel's leadership positions that they must have participated in the wrongful conduct themselves, and must have directed and trained staff at CC Brown to engage in the wrongful conduct.  This is not enough.  Subject to the constraints of Rule 11, the Osborns must allege more.

Regarding the alleged conspiracy, the Osborns never state the particulars of that agreement, such as who was part of the agreement, when it began, what the goal of the conspiracy was, or what actions the coconspirators took in furtherance of the conspiracy.

The claims of fraud also lack the necessary specificity.  The Osborns do not allege that either Mr. McCall or Mr. Gettel personally made a false representation.  Instead, they focus on the false representations made by staff at CC Brown.  The Osborns must make more detailed allegations, such as who made the false representations, when they were made, and why those representations were false.

## IV.  CONCLUSION

For the reasons stated above, the court ORDERS the following:

•       The first cause of action (wire fraud) and the second cause of action (bank fraud)

        are HEREBY DISMISSED WITH PREJUDICE;

•       Mr. McCall's and Mr. Gettel's Motion for Judgment on the Pleadings (Docket

        No. 46) is GRANTED; and

•       The claims against Mr. McCall and Mr. Gettel are HEREBY DISMISSED

        WITHOUT PREJUDICE.

The Osborns may file a motion to amend with an attached proposed amended complaint.

If the Osborns fail to do so by May 1, 2013, then the claims against Mr. McCall and Mr. Gettel

will be dismissed with prejudice.

        SO ORDERED this 8th day of April, 2013

                        BY THE COURT:

                        TENA CAMPBELL
                        U.S. District Court Judge